UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERTO RUIZ TORRES,

      Petitioner,

v.                                    Case No.  2:26-cv-1141-JES-NPM

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY, et
al.,

      Respondents.
_____/

## OPINION AND ORDER

Petitioner Roberto Ruiz Torres, an immigration detainee, initiated this action by filing a pro se 28 U.S.C. § 2241 petition for writ of habeas corpus. (Doc. 1). Respondents have filed a response and a supplemental response to the petition. (Doc. 7; Doc. 12). Upon review of the parties' filings, the Court finds that the petition must be granted.

### I.   Background

Ruiz Torres is a national and citizen of Cuba who was paroled into the United States on June 9, 1980. (Doc. 7 at 2). After being convicted on several drug related offenses, an immigration judge ordered his removal on February 26, 1996. (Doc. 7 at 2). Shortly thereafter, he was released under an order of supervision. (Id.)

On January 3, 2026, Immigration and Customs Enforcement (ICE) officials encountered Ruiz Torres at the Dade County Correctional Cetner after his arrest on a cocaine offense.  (Doc. 7 at 2).  He was taken into immigration custody on January 8, 2026.  (Id.)

On February 13, 2026, "ICE attempted to effectuate a third country removal to Mexico, but the petitioner refused to exit the bus[.]"  (Doc. 7-2 at 2).

## II.  Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)).  The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final.  Id.  Detention may continue after the removal period, but not indefinitely.

Ruiz Torres argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because his post-removal-order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future.  In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  533 U.S. at 700-01 (2001).  If removal is not practically attainable, detention

2

no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.[1]

On May 1, 2026, Respondents argued that Ruiz Torres was not entitled to release because he had been detained only 97 days when he filed his petition on April 13, 2026. (Doc. 7 at 3). Now there is no dispute that he has been in ICE custody for more than six months following his latest order of removal. Thus, on July 2, 2026, the Court directed Respondents to update the Court with progress by "describe[ing] in detail all efforts made to secure Torres's removal." (Doc. 10). In their supplemental response

---

[1] The Supreme Court subsequently clarified that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review after their detention exceeds six months. See Clark v. Martinez, 543 U.S. 371 (2005) (extending Zadvydas's holding to inadmissible aliens as a matter of statutory interpretation).

(Doc. 12), Respondents argue that the Court should toll the removal period under 8 U.S.C. § 1231(a)(1)(C).  Generally, Respondents contend that Ruiz Torres is not entitled to release because after his detention, ICE attempted a third-country removal to Mexico, but he thwarted ICE's efforts at removal by failing to voluntarily depart.  (Doc. 12 at 2).

Title 8 U.S.C. § 1231(a)(1)(C) explicitly provides for extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the noncitizen "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention."  Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)).  More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'"  Singh, 945 F.3d

4

at 1314 (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)).

Here, Respondents do not show that Ruiz Torres's actions implicated § 1231(a)(1)(C). They offer the declaration of Deportation Officer Dairon Hernandez who states only that "[o]n 2/13/2026 ICE attempted to effectuate a third country removal to Mexico, but the petitioner refused to exit the bus witness by D.O.R. Hettenhouser." (Doc. 7-2 at 2). They also offer a declaration from Deportation Officer Authur McLaughlin who states that "ICE intends to remove the petitioner to Mexico pursuant to INA § 241(b)(2)(E) approximately within the next two weeks" by transporting him to an ICE field office along the southwest border. (Doc. 12-2 at 2). Although Officer McLaughlin insists that ICE will continue to try to convince Ruiz Torres to depart to Mexico, conspicuously absent from the supplemental response is any evidence that Mexico has agreed to accept him (and provided the appropriate paperwork) or has even been informed of his existence. In fact, Respondents provide no evidence suggesting that ICE has actually communicated with Mexico specifically regarding Roberto Ruiz Torres. Nor do Respondents claim that necessary travel documents have been sought—let alone obtained—for any country. Without more, the Court cannot find that Ruiz Torres's actions in Texas prevented his removal and reset Zadvydas' 180-day clock. The Court's confidence in Ruiz Torres's foreseeable removal to

Mexico is further undermined by the fact that other district courts recognize that Mexico's acceptance of a Cuban national may be contingent upon the noncitizen's agreement to go there, which Respondents clearly do not have.  See Sanchez v. Bondi, et al., No. C25-2573-KKE, 2026 WL 160882, at 3-4 (W.D. Wash. Jan. 21, 2026) (noting that Mexico's conditional acceptance casted doubt on Respondents' ability to remove the petitioner); Arenado-Borges v. Bondi, No. 2:25-cv-2193-JNW, 2020WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggest Mexico's acceptance may be contingent on the noncitizen's consent").

In short, Respondents have had more than 30 years—and more than six months since his present detention—to remove Ruiz Torres from the United States and are still unable to articulate a specific plan for his removal to Cuba, Mexico, or another country. Instead, the only effort at removal was a trip to the United States-Mexico border in an apparent attempt to coerce Ruiz Torres into voluntarily departing to a country of which he is not a citizen.  But detaining a noncitizen and using the specter of continued detention to compel him to "voluntarily" depart by walking across an international border does not constitute removal; rather, it is an action designed to lead to the type of indefinite detention that Zadvydas sought to prevent.  And while there may be some possibility that Mexico will eventually accept Ruiz Torres, "that is not same as a significant likelihood that

6

[he] will be accepted in the *reasonably foreseeable future*." Arenado-Borges, 2025 WL 3687518, at \*4 (emphasis added) (quotation marks omitted).

Based on the evidence, or lack thereof, the Court finds that Respondents do not show a significant likelihood that Ruiz Torres will be removed in the reasonably foreseeable future. Therefore, he is entitled to release from detention under Zadvydas, but he remains subject to the terms of an order of supervision.[2] If he fails to comply with the conditions of release, Ruiz Torres may be subject to criminal penalties—including further detention. See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Ruiz Torres to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

### III. Conclusion

Accordingly, it is **ORDERED**:

1.  Roberto Ruiz Torres's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

---

[2] Ruiz Torres is in ICE custody under a detainer from the state. If appropriate, Respondents shall return him to state custody.

7

2.    Respondents shall release Ruiz Torres within 24 hours of this Order and either return him to state custody or facilitate his transportation from the detention facility by allowing him telephone access to notify counsel and his family of when and where he can be collected.

3.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on July 10, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

8